My name is Robert James, and I'm an Assistant Attorney General with the Arkansas Attorney General's Office, Leslie Rutledge. I'm reserving two minutes for rebuttal. Your Honor, I represent Sergeant Quick, Todd Quick, in this case. With due respect, the district court applied the wrong standard of reasonableness. The correct standard is whether a reasonable officer could have concluded that Mrs. Moore-Jones was fleeing. This is reversible error. Furthermore, there is no clearly established law because there are no cases on point where a pit maneuver has been found unreasonable. Go to your first point. I have the judge's, Judge Leon Holmes' opinion here. Where do you say he's wrong on that? Sure, if you've got it handy. Looked to me like he quoted boilerplate stuff generally. That's on the appendix, page 202. Okay, I've got his actual opinion. Yeah, what page of his opinion? Yeah, we've got his opinion. I don't have the appendix version. It's appendix. It's not very long. Page 6. Page 6 of his opinion. Okay, thank you. Tell me where. Yes, it says on the fourth line from the bottom, the court cannot say as a matter of law that a reasonable officer on the scene would have concluded that Mrs. Moore-Jones was fleeing. And the standard should be could instead of would on that. And that's in the Nance case by this court, the Nance v. Simmons case, in which it states that a genuine issue of material fact exists as to whether a reasonable officer could have believed his actions to be lawful. And that is, that's the case in the brief of the appellee. They cite the same standard of could on page 11 of their brief. Thank you. Have we ever had a case where we distinguished could versus would? And where the court faced it, pointed up and said, don't use would, use could? I don't know that there is. Yeah, go ahead. I don't see Nance in your table of authorities. Nance is in the, it's not in the table of authorities. I will have to submit that on rule. I have to submit that on rule. Yeah, 28J. And was Nance v. Simmons a fleeing issue or was it arrest or detention issue? It was a fleeing issue. Well, it was a fleeing on the ground. It wasn't a fleeing vehicle. It was what? Not a fleeing vehicle. Someone running. Right. Okay. It was a pursuit on the ground. The, at the appendix 202 is where the court stated that standard. And my client was performing his job in an objectionably reasonable manner, starting from when he determined that Mrs. Moore-Jones was breaking the law. He determined that she had expired tags and registration that was expired. He then came up behind her, turned on his flashing lights across his car. She did not stop at that point. He turned on his siren and she still did not stop. He then flashed a spotlight into her rear dash, and at that point she did not stop. He reasonably believed that she was fleeing. Also, there was an overt act when she tried to pull over on the side of the road. I think this preoccupation with the word fleeing bothers me. The question is where in the totality of circumstances analysis does Moore force become reasonable? Well, Sergeant Quick, my client. I don't think, well, certainly if anyone who walks away from a lawful command, some force can be grabbed by the shoulder. Yes. Doesn't matter whether, oh, well, I wasn't fleeing. I was just ignoring them because I don't like police officers. Well, if it's a lawful command or a reasonable command, then you can use some force. So the word fleeing conjures up much more dramatic conduct than I think is necessarily relevant to the reasonable force analysis. But it's a continuum. Right. Well, when she pulled over to the side of the road, then she erratically pulled right back on. I think it's quite arguable that she wasn't fleeing in the context of apparently every other published pit stop case, and she wasn't fleeing in the context of most of the felons with trunks full of contraband who get stopped, attempted traffic stop, and take off at 100 miles an hour through three counties. Yes. That's fleeing. Yes, I understand that. But I don't think fleeing in the excessive force context requires that level of drama. Well, she continued on, and she had the opportunity to pull over at an exit where there was space to pull over. Let me put it this way. The officer testified that I couldn't have done my pit maneuver on the left side because we were on a service road and she would have spun into the middle of the interstate. So he recognized a gradation in the use of force, and he said the only place where I could do the maneuver on the right side was when the wide exit ramp was there, and it was obvious she wasn't going to pull over on it. Obviously, that's what happened. I was confident. I don't know how he testified. I can't quote the words. But he felt that he would then spin her into a, let's say, non-hazardous, a place not likely to injure. Now, that to me is entirely relevant excess force analysis by a police officer on the scene or a reviewing court. And so it affects the way that I look at the word fleeing. She was resisting arrest. She was refusing to stop. And because of that, that's why he, of the totality of the circumstances, is all that had happened since he found out she was breaking the law. She was resisting a stop. I'm sorry? She knew she was aware of the stop because then, of course, the district court's first opinion says, and there was no siren, because that was based on a 12B6 and the siren wasn't alleged in the complaint. And then when the court gets the summary on a summary judgment record and it's undisputed that the siren was on, all of a sudden that drops out of the district court's analysis. Seems to me it's quite significant. He was making clear she was to pull over. And she, as I understand her testimony, she admitted it, didn't she? Well, she admitted that she was. At first she thought I was getting out of the way because I assumed he was after somebody else or on other business. And then when he stayed behind her with lights and sirens going, she knew she was the target. Yes. And then she didn't stop at that exit and she didn't stop at that. There's another spot, a triangle area, just past where the exit is that she could have also pulled off on too. Wait a minute. I thought he spun her out using the exit ramp. She could have used the exit ramp. The exit ramp is the key moment in time, in my view. Yes. It's a place where she clearly could have pulled over safely. It was reasonable for what? And he did not take action until, as I understand the facts, and somebody can correct me, until it was clear to the officer that she wasn't going to pull over at the last exit point before town. Yes, and it was reasonable to use the pit maneuver because they were going into a populous. Not if he'd have spun her into the interstate in front of an 18-wheeler. Right. But he didn't do that. Yeah, right. There's no clearly established law in that regard. And they were moving into a populous area, making it dangerous for the fleeing to continue into that area because of others, pedestrians and other people. And so that, he made the decision, and we can't look at it with 20-20 hindsight. We have to look at it from him as a reasonable officer at the time that it happened. The clearly established law, there's none that the parties found nor the court found that are similar to the cases here. They're not particularized to this case as White v. Pauley requires. You agree, though, counsel, it was a nonviolent misdemeanor, the registration? Initially, it was a nonviolent misdemeanor, but at the time that he did the pit maneuver, it was moving into a felony situation. And he reasonably believed that she would continue. We have many, many cases that say if it's a nonviolent misdemeanor, boy, it has to be a real low level of force. There in your brief, there in the other parties' briefs, I won't quote you the cases. Any force is not justified against nonviolent misdemeanors. We have that refrained several times in our cases. What do you do with that? Right. I understand that in those cases. However, the situation wasn't, at the time that he performed the pit maneuver, it was not a nonviolent misdemeanor. It was a fleeing situation at that point. I think that's quite debatable. I think counsel goes into the Arkansas law books and says it's still a misdemeanor. To not pull over on foot or in a car in response to a command to do so. Okay. We're looking at the reasons. It's not a forceful resistance of arrest. Right. Well, we're looking at a reasonable, what a reasonable officer would say. Well, I know, but you haven't touched the cases that Judge Benton's talking about with your answer. The cases that... Because this wasn't violent as to any human being at the time of the pit maneuver. And it probably wasn't a felony at that point. It was a fleeing situation. I mean, that's what... Back to the word fleeing. I don't think it was fleeing. The fact that... In the sense of the case, in all of your pit cases involving 75 to 125 mile an hour chases, that's fleeing. This was not fleeing. Okay. She did not... She didn't indicate this with her flashers, with her blinker. What about her speed? Her speed was half the speed limit or something like that. She increased her speed almost three times from the time she was on the show. Yeah, but wait. What she's still driving, the max speed she drove was like 30-something minutes, 55. It's 55 mile an hour speed limit there. Right. Pretty fast. And she still did not stop. I mean, she was breaking the law. She didn't stop. He had the... How far from town? They were town from... They were still a good distance from town. A mile from the city of Bryant. Right. But there were cars out there that could be seen in the videotape. Counsel, do I understand in the record that the district court discussed a clearly established prong in ruling on the motion to dismiss? Yes. And then there was a subsequent motion for summary judgment, and the court got into the constitutional violation aspect, but it didn't revisit the clearly established ruling. Is that the way it... Do I understand this correctly? Our opinion on page six, the judge touches on clearly established where he uses the standard of would rather than could. And there's a difference between those two. The two could be more general. I'm just going to reserve the rest of my time if there's any questions. Well, that doesn't... I mean, that doesn't... You're talking about the statement that the court cannot say as a matter of law that a reasonable officer on the scene would have concluded that Moore Jones was fleeing? That goes to the clearly established. No, it doesn't. I don't see that going to clearly established. I thought the court in its opinion said I don't have to return to clearly established. I've already covered that. The fact that a reasonable officer would not understand that it was unlawful, and unlawful meaning that it was clearly established. Well, the bottom line is there's not a renewed discussion, except you say that that refers to it. I may differ with that, but there's no further discussion on the clearly established prong in this order. It's dealt with in the order on the motion of dismissal. No, Your Honor. All right. I'll reserve the rest of my time. Mr. Keziah, do I say that right? Yes, Your Honor. Keziah, think of the excuse. Works great for attorneys. Thank you, Your Honors. May it please the court. My name is Matt Keziah. I'm here appearing on behalf of the appellee, Ms. Moore Jones. We're here today to determine is there a genuine issue of material fact looking at this record and alight most favorable to my client? That's a mouthful. Easier way to say the standard is is there room to disagree? That's all we have to show to win here today. Opposing counsel says. Is this a jurisdiction argument or in the merits? This is a standard review argument. So it's not exactly jurisdictional. This is what the standard is that we're working with here. They filed a motion for summary judgment that objectively there's only one conclusion here. It clearly establishes a matter of law. We will absolutely get to that, Your Honor. I'm right now just establishing the standard of review. But let's discuss this clearly. We do clearly establish based on the facts viewed most favorably to your client at this stage of the case. Yes. So why do we have to talk about the facts other than for you to remind us what those are? Because he's raising could versus would. Actually, that's legal. Leading? That's legal. Oh, yes. That's a legal standard. Forget that. And he's wrong about it anyway. Yes, Your Honor. I mean, he's right that could is the right word for clearly established. But the court wasn't discussing clearly established at that point in its order as Judge Shepard points out. Yes, Your Honor. So let's get to clearly established. Let's cut to the brass tacks. This is a three-part test under Graham. Part one, what is the severity of the crime? That's the merits. That's not clearly established. You only want to talk about, okay, very easy. That's where successful plaintiffs in a district court usually lose in the Supreme Court. Yes, Your Honor. And we get reminded by the Supreme Court about five times in the last decade that we should enforce clearly established doctrine with the rigor that they do. And that's what we're here to do. The standard here today is would a reasonable officer been on notice? That's what the clearly established. Al Kidd says where is a case that demonstrates that this is debatable? We're not debating, Your Honor. I think we're actually agreeing. You haven't got any case here. You haven't got anything but general principles in your brief. Every pit maneuver case goes in favor of qualified immunity, and you point out some reasons why they're distinguishable because they were high-speed flights, and this was factually different. But you don't have a good case, do you? I don't think there is a case. No? I don't think there's a case at all that's on all fours. So usually that means qualified immunity applies because of the policy reasons for the doctrine. Respectfully, Your Honor, I disagree. Under both Atkinson and Shannon, this Court held the standard is, and I'm quoting, notice. It is notice, receiving notice, some kind of reasonable notice. What would a reasonable officer have done under the circumstances? That's our yardstick. Why would a reasonable officer not have knocked my client into a concrete ditch at the time? Well, the problem for me is the district court used the absence of a case on point to find that it was clearly established. And it seems to me it should be just the opposite. If it's going to be clearly established, you should be able to cite a case on point with very, very similar facts that would put a reasonable officer on notice. Your Honor, maybe this is the first case with any kind of similar facts. There are no other cases that involve a 38 and a 55, clearly a nonviolent misdemeanor, clearly not fleeing arrest case. They just, they don't get up to the appellate court. I've already, some of my questions opposing counsel was to give you some warning as to what troubles me by the way you've argued this case. This wasn't fleeing arrest. That's only if you take a particular interpretation of those words. This was a refusal to obey a persistent command to stop. Yes, Your Honor. Every case recognizes that regardless of what the basis for the stop was, you have to stop. Yes, Your Honor. And if you don't stop, some level of force may reasonably be applied to achieve the stop so that the officer can go about pursuing what the basis of the stop was. And the question today is, we know what force was used. Was that, is there room for doubt on the objective reasonableness? Can the record viewing it most... That doesn't get you clearly established. That may get you the first prong at the summary judgment stage. It doesn't get you clearly established. This court has held twice, both Shannon and Atkinson. Each time, you don't have to have a case on all fours. Are they, those are, one of them is 2013. When's the other one? 2013 is Atkinson. 2010. Well, White v. Pauley is a more recent lecture. And it's been more pointed each time they've lectured us on the rigor of the clearly established doctrine. But those cases don't overturn Shannon or Atkinson. So there's still precedental value. We're concerned they do. Let me be plainer with you. Which of our nonviolent offender cases, we've got several of them, and you've undoubtedly read them. Which one's the closest? Which one would have said nonviolent offender fleeing? I know you don't like the term fleeing. Which one of those would have said you can't use this much force? I'd say Atkinson. Atkinson is on all fours. And Atkinson, as I recall... Counsel, be careful. It's not on all fours. But go ahead. Well, yes, Your Honor, that's overstepping. Thank you. Atkinson is as close as we can get. Because ultimately, there are no cases in the Eighth Circuit on identical facts. Obviously not. Is the only circuit case the Sharp case still, the Eleventh Circuit? That's the only case that I could find in my briefing. At the time of the motion for summary judgment, candidly, I didn't re-research it since our briefing. So there could be a new case out there since April or so, whenever we finish briefing this case. I don't think that there is. But I'm open to being surprised. In terms of Atkinson, a person had a cell phone. An unmarked officer, not in uniform, not warning him, I'm an officer, you have to give me the phone because I'm an officer, bull rushes this guy to take the phone from him. That was objectively unreasonable. Why? Same three factors. Nonviolent, not fleeing, not harm to anyone. This court provides in that case, you don't have to have a case on all fours, and it doesn't make sense to require a case on all fours. What if this is the first case? What's the closest car case in your favor, in your view? Cars are different from a safety standpoint, period. They are different. I think it was that Eleventh or Tenth Circuit case that I cited at summary judgment stage. I believe it was Sharpe. No, it was not Sharpe. Sharpe goes the other way. Sharpe goes the other way. Qualified immunity. The district court CFs it. That's a giveaway. Let's see here. The court would bear with me as I burn through the briefing. Marshall v. West comes out of the district court of Alabama, Middle District Court, Alabama, 2008. That site is 559 Federal 2nd 1224. There, the Alabama Middle District Court found that the use of a pit maneuver to affect a nonviolent misdemeanor, there it was a seat belt infraction, was both objectively unreasonable and violative of the Fourth Amendment. They took issue with that. Is that in your brief? We're all asking. Yes, Your Honor. Tell us the name of the case again. No, it's not. It's not in your table of authorities. It's not in the appellate briefing. It's at page 176 of the appendix. I cited this at the summary judgment stage at district court. Once again, that is Marshall v. West, 559 Federal Supplement 2nd 1224. And was that a merits decision or a qualified immunity decision? That was a qualified immunity decision. That was an issue. Same thing. I couldn't have known. I had no way of knowing that knocking someone into a concrete ditch for a seat belt infraction, I believe at the time, could have possibly been illegal. There is no merit to that argument. Knocking someone into a concrete ditch is clearly more than de minimis force. As the court provided earlier, if someone's walking away from an officer and that officer grabs their shoulder or their hand, that's one thing. It doesn't send them to an emergency room. My client went to the emergency room that night. They were taken away in an ambulance, her and her daughter. They're both afraid of the police now. This is more than de minimis force. I don't get it. Well, the de minimis, that's gone by the wayside. Lawyers should stop talking about de minimis. It's relevant to damages. The Supreme Court has said de minimis can still be actionable. And I agree. But this was not, I mean, you have to weigh the risk of injury from the maneuver used compared to the risk of someone continuing to flee in a car even at 40 miles an hour into a town in the dark, which is always dangerous. It could be dangerous. It's not always dangerous because we don't know what would happen. A pit maneuver, well, what's, you know, this is why qualified immunity is granted in these cases because this weighing is very hard to do objectively. Yes, Your Honor. The officer had a good explanation of the force used, the time he used it, and why he used it. And I don't, I have trouble seeing why that isn't sufficient under Supreme Court jurisdiction. Plus the absence of relevant cases. Well, now you've given us one, and I don't know why you didn't give it to us in the brief. I don't know what the court says either. That was the only case that I could find. I did an exhaustive search for pit maneuvers. I left the Eighth Circuit because I said I can't find anything. I went all the way down to district court level. There's not a lot of cases on pit maneuvers. This doesn't happen a lot. Why? Because officers don't usually knock people into concrete ditches to affect a traffic stop. That's not a common thing. And when they do do it, oftentimes they say, you know what, that was wrong. I'm going to pay you money. This doesn't have to go to a trial. It's very hard to get up to the appellate courts. There has to be a lot of cases to get up there. This is a rare occurrence, which is why the answer here is the standard review. But you think that, as the Supreme Court has said, that existing law would have placed the constitutionality of this officer's conduct beyond debate. Beyond debate. You think that's here? I think this is absolutely beyond debate. There is nothing de minimis about knocking someone into a concrete ditch 51 seconds into a 40-mile-an-hour pursuit on a 55-mile-an-hour road. It would have taken them two and a half minutes to get to the town. He had many chances to get up there. He was coached beforehand and reminded of it after the fact. Be mindful of the people who don't feel safe. Why did she not feel safe? There's a blue light rapist in the area using cop lights to lure people into lowering their guard. Why might she feel unsafe? Maybe she doesn't want to get raped or have her daughter get raped. That could be a pretty reasonable reason to be afraid. It's dark out. It's sparsely populated. The narrow shoulder. That shoulder is narrow. She didn't fall into a ditch for no reason. There was a small shoulder there. Again, this is 51 seconds into a chase, and it's not even really a chase. This is a saunter. This is slower than I go on the access road. She's broadcasting to this person. We won't give you a Miranda warning, but keep going. Thank you, Your Honor. She is broadcasting all except for turning on her warning lights. I am not fleeing, objectively. There is no two ways about it. Well, she did increase her speed now. She increased her speed from 14 to 38. Giving credit where credit's due, that is slightly more than double. That's approximately 24 miles an hour. Didn't she pass the officer? Well, she literally drove past him. He was on the side. He ran her tags. It was a marked car? She could have seen it, but she could have also been looking somewhere else. She could have been talking to someone. I thought she testified she did see it. I think she testified that she saw the car. I don't recall that she testified she saw this as definitely a marked car. Well, she certainly saw the lights on when she pulled over to 14 because she thought he was doing something else because she claimed she didn't know. I assume she didn't know her license was expired. Yes, Your Honor. And then it became obvious to her that she was the target. Yes. And then she drove. And then she went past a safe place to pull over an exit ramp. She didn't feel that was safe. It's still dark. It's still sparsely lit. Wait a minute. We're doing this from the officer's perspective. From a reasonable officer's perspective, not from Quick's perspective. From a reasonable officer's perspective. And a reasonable officer's perspective would have been. And what's your evidence that he was unreasonable? I have nine seconds, but I can do this real quick. I know what the supervisor testified to. Ultimately, that's the biggest deal. The supervisor himself says that was done too soon. I would have waited longer. What more could we possibly need? Viewing the record in light most favorable, that trumps everything. No, it doesn't. Why not? One other comment. I mean, why not? Because, you know, it's an objective test. And he says I would have done it sooner. Well, I don't know. I haven't read the question. I haven't read how he, you know. I'd cite the court. I read the statement. It just doesn't establish that this was constitutionally unreasonable. Much less clearly established that he would be the only. That no reasonable officer would do this. The standard is not no reasonable officer would do it. The standard is would a reasonable officer have done that? And those are two very different things. I don't think so. That's the merit. That's if you get past qualified immunity. Hopefully we do, Your Honor. Thank you for your time. Your Honor, my client requests and prays that this court should reverse the trial court's denial of Sergeant Quick's motion for summary judgment based on qualified immunity. Thank you, counsel. It was well argued. The excessive force cases are always difficult. And once again, we'll take it under advisement and do our best. Thank you all.